## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSE HERRICK, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3181 |
| | The Honorable John M. Gerrard, U.S.D.J. |
| Plaintiff, | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| ROBERT CARLSON, on behalf of himself and all others similarly situated, | Case No. 4:22-cv-3184 |
| | The Honorable John M. Gerrard, U.S.D.J. |
| Plaintiff, | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |
| CAREY M. BALLARD, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-3185 |
| | The Honorable John M. Gerrard, U.S.D.J. |
| Plaintiff, | The Honorable Cheryl R. Zwart, U.S.M.J. |
| v. | CLASS ACTION |
| NELNET SERVICING, LLC, | |
| Defendant. | |

| | |
|---|---|
| JENNIFER HEGARTY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3186<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| AMANDA BEASLEY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3187<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MICHAEL VARLOTTA, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>NELNET SERVICING, LLC,<br><br>      Defendant. | Case No. 4:22-cv-3188<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| DYLAN HOLLENKAMP, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3189<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| WILLIAM SPEARMAN, BRITTNI LINN, JESSICA ALEXANDER, CHRISTOPHER SANGMEISTER, TAYLOR VETTER, NICHOLE ALLOCCA, KAYLI LAZARD, and BRIDGET CAHILL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3191<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| BARBARA MILLER, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3193<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| FRANCINE SIMMONS, individually and on behalf all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3194<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTONIA BIRD, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3195<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| VERONICA JOAQUIN-TORRES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3196<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| KENNEDY FREEMAN, and AARON MORRIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3197<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| MIA SAYERS and KYLEE WILLIAMS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No.  4:22-cv-3203<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| PAMELA BUMP, MELISSA CHARBONNEAU, DOUGLAS CONLEY, NOAH HELVEY, DALLIN ILER, DUSTIN JONES, DEVINNE PETERSON, JUSTIN RANDALL, SOFIA RODRIGUEZ, and RACHEL WOODS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NELNET SERVICING, LLC,<br><br>        Defendant. | Case No. 4:22-cv-3204<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| CHRISTOPHER CORDARO, Individually, and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3207<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| RYAN GAMEN, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3209<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| HUNTER FREELAND, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NELNET SERVICING, LLC,<br><br>   Defendant. | Case No. 4:22-cv-3211<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| MAX EICHENBLATT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3227<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| NEIL KITZLER, an individual, and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NELNET SERVICING, LLC, a Nebraska Limited Liability Company, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 4:22-cv-3241<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| ANTHONY QUINN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDFINANCIAL SERVICES, LLC and NELNET SERVICING, LLC,<br><br>Defendants. | Case No. 8:22-cv-413<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |

| | |
|---|---|
| IAN SCOTT, LESLY CANALES, ERIC POLANCO, JOSHUA SANCHEZ, and DELILAH OLIVEIRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3259<br><br>The Honorable John M. Gerrard, U.S.D.J.<br>The Honorable Cheryl R. Zwart, U.S.M.J.<br><br>CLASS ACTION |
| GARNER KOHRELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>NELNET SERVICING, LLC,<br><br>Defendant. | **Case No. 4:22-cv-3267**<br><br>**The Honorable John M. Gerrard, U.S.D.J.**<br>**The Honorable Cheryl R. Zwart, U.S.M.J.**<br><br>**CLASS ACTION** |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a) AND FOR APPOINTMENT OF <u>INTERIM CO-LEAD COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 4

III.    CONSOLIDATION ............................................................................................. 6

        A.      Legal Standard ....................................................................................... 6

        B.      Consolidation of the Related Actions is Warranted.................................. 7

IV.     APPOINTMENT OF INTERIM CO-LEAD COUNSEL......................................... 9

        A.      Legal Standard ....................................................................................... 9

        B.      The Court Should Appoint Milberg, Morgan & Morgan, and Stueve Siegel
                Hanson as Interim Co-Lead Counsel Under Rule 23(g)....................... 10

                i.      Proposed Interim Co-Lead Counsel have performed substantial work
                        investigating and litigating the claims ......................................... 10

                ii.     Proposed Interim Class Counsel Have Significant Relevant Experience ....... 12

                        a.    Milberg................................................................................ 12

                iii.    Proposed Interim Co-Lead Counsel have committed, and will continue
                        to commit, the resources necessary to represent the class ............................ 16

                iv.     Other Factors Support Designating Proposed Interim Co-Lead Counsel ....... 17

        C.      The First-to-File Rule Further Supports the Appointment of Proposed
                Interim Co-Lead Counsel........................................................................ 24

V.      CONCLUSION.................................................................................................. 25

## **TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGE(S)**

*Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK),
   2014 WL 835174 (D. Minn. Mar. 4, 2014) ...................................................... 9, 10

*Biondi v. Scrushy*,
   820 A.2d 1148 (Del. Ch. 2003)................................................................... 25

*Blair v. Equifax Check Servs. Inc.*,
   181 F.3d 832 (7th Cir. 1999) ..................................................................... 7

*Cappello v. Franciscan All., Inc.*,
   No. 3:16-CV-290-TLS-MGG, 2017 WL 781609 (N.D. Ind. Feb. 28, 2017) ........................ 10

*Carlin v. DairyAmerica, Inc.*,
   2009 WL 1518058 (E.D. Cal. May 29, 2009) ...................................................... 24

*Devlin v. Transp. Commc'ns Int'l Union*,
   175 F.3d 121 (2d Cir.1999) (internal citations and quotations omitted) ................................. 7

*E.E.O.C. v. HBE Corp.*,
   135 F.3d 543 (8th Cir. 1998) ..................................................................... 7

*Enter. Bank v. Saettele*,
   21 F.3d 233 (8th Cir. 1994) ...................................................................... 7

*First Choice Federal Credit Union v. The Wendy's Co., et al.*,
   2:16-cv-506, ECF No. 20 (W.D. Pa. July 12, 2016)................................................. 9

*Greater Chautauqua Federal Credit Union v. Kmart Corp. et al.*,
   1:15-cv-02228, ECF No. 44 (N.D. Ill.)............................................................. 9

*In re Aluminum Phosphide Antitrust Litig.*,
   No. 93-2452, 1994 WL 481847 (D. Kan. May 17, 1994)........................................... 17

*In re Insulin Pricing Litig.*,
   2017 WL 4122437 (D.N.J. Sept. 18, 2017) ....................................................... 24

*In re Mun. Derivatives Antitrust Litig.*,
   252 F.R.D. 184 (S.D.N.Y. 2008) ................................................................ 24

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004)................................................................. 12

*In re Wendy's Co. S'holder Derivative Litig.*,
   No. 1:16-cv-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018)...........................................17

*Kaplan v. 21st Century Oncology Holdings, Inc.*,
   No. 2:16-cv-210, 2016 WL 9383330 (M.D. Fla. July 21, 2016), report and recommendation
   adopted, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) (internal citations
   omitted)......................................................................................................................................8

*Kubiak v. Barbas*,
   No. 3:11-cv-141, 2011 WL 2443715 (S.D. Ohio June 14, 2011)............................................17

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)..................................................................................................................7

*Michelle v. Arctic Zero, Inc.*,
   2013 WL 791145 (S.D. Cal. Mar. 1, 2013) ............................................................................24

*Moehrl v. Nat'l Ass'n of Realtors*,
   No. 19-cv-01610, 2020 WL 5260511 (N.D. Ill. May 30, 2020)...............................................9

*Moradi v. Adelson*,
   2011 WL 5025155 (D. Nev. Oct. 20, 2011) ...........................................................................25

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ....................................................................................................8

*Richey v. Ells*,
   2013 WL 179234 (D. Colo. Jan. 17, 2013)............................................................................24

*Roe v. Arch Coal, Inc.*,
   No. 4:15-cv-910, 2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ...............................................9

*Seguro de Servicio de Salud v. McAuto Sys. Group*,
   878 F.2d 5 (1st Cir.1989)..........................................................................................................7

*Steele v. United States*,
   2015 WL 4121607 (D.D.C. June 30, 2015)............................................................................24

*Syzmczak v. Nissan N. Am., Inc.*,
   Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306 (S.D.N.Y. May 15, 2012) ........9

*UNeMed Corp. v. ProMera Health, LLC*,
   No. 8:15CV135, 2016 WL 1259387 (D. Neb. Mar. 30, 2016)..................................................8

iii

## **STATUTES**

28 U.S.C. § 1404 ................................................................................................ 5

28 U.S.C. § 1407 ................................................................................................ 5

## **OTHER AUTHORITIES**

7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005) ................................ 10

Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018) ................................................... 22

*Manual for Complex Litig.* § 10.21 ................................................................... 22

*Manual for Complex Litig.* § 10.22 ............................................................. 10, 17

*Manual for Complex Litig.* § 21.11 (4th ed. 2004) ................................................ 9

## **RULES**

Fed. R. Civ. P. 23(g) ........................................................................... 1, 10, 24

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................ 10

Fed. R. Civ. P. 23(g)(1)(A)-(B) ....................................................................... 10

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................ 10

Fed. R. Civ. P. 23(g)(1)(C) ............................................................................ 16

Fed. R. Civ. P. 23(g)(2) ................................................................................. 1

Fed. R. Civ. P. 23(g)(3) ......................................................................... 1, 9, 12

Fed. R. Civ. P. 42 ................................................................................. 1, 6, 7

Pursuant to Fed. R. Civ. P. 23(g), Milberg Coleman Bryson Phillips Grossman LLC ("Milberg") moves for appointment as interim class counsel together with Stueve Siegel Hanson LLP and Morgan & Morgan Complex Litigation Group (collectively, "Proposed Interim Co-Lead Counsel"). As explained below, the appointment of Milberg, Stueve Siegel Hanson, and Morgan & Morgan as Interim Co-Lead Class Counsel will provide the counsel "best able to represent the interests of the class." See Fed. R. Civ. P. 23(g)(2).

Under Federal Rules of Civil Procedure 23(g)(3) and 42, Plaintiffs Jesse Herrick, Carey M. Ballard, Amanda Beasley, Jennifer Hegarty, and Barbara Miller (the "First Filed Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move for consolidation of the above captioned actions currently pending in this Court (the "Related Actions") and for the appointment of Milberg, Morgan & Morgan, and Stueve Siegel Hanson as Interim Co-Lead Counsel in this matter.[1] First Filed Plaintiffs further move the Court to set a schedule for the filing of a consolidated complaint and briefing on any motions related to the same.

## I.    INTRODUCTION

Proposed Interim Co-Lead Counsel are the right team to guide this litigation for the putative class members. They are nationally recognized as leaders in data breach litigation and have litigated and resolved more data breach class actions than any other law firm involved in this litigation, including some of the most high-profile data breach cases ever filed. Moreover, with over 800 attorneys combined among the three firms, they have the resources necessary to prosecute and take to trial a complex data breach class action like the one before this Court. Their appointment will best serve the Class.

---

[1] Undersigned counsel met and conferred with Defendant's counsel. Defendant's Counsel takes no position regarding this Motion to Consolidate and Appoint Interim Class Counsel.

Proposed Interim Co-Lead Counsel were the first to file a case arising out of this data breach[2] and since then have been intimately involved in investigating, prosecuting, and coordinating this litigation, including hosting an initial plaintiffs' coordination call on September 9, 2022 and working with cases pending outside of the District of Nebraska under 1404 to transfer those cases to this District for the efficient prosecution of this matter. Declaration of Gary M. Klinger in Support of Plaintiffs' Motion to Consolidate Pursuant to Fed. R. Civ. P. 42 and for Appointment of Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(3) ("Klinger Decl."), ¶¶ 2-4. Proposed Interim Co-Lead Counsel have also conducted a mediation with Defendant Nelnet Servicing, LLC ("Defendant" or "Nelnet") to explore resolution of this case. *Id.* ¶ 6. Although a settlement was not reached, Proposed Interim Co-Lead Counsel became intimately familiar with this case as they exchanged informal discovery with Defendant and learned about the defenses Defendant may raise should this litigation move forward. *Id.* Moreover, Defendant's counsel has indicated they are ready to re-engage in settlement discussions should this Court appoint Proposed Interim Co-Lead Counsel as class counsel. ***Notably, Proposed Interim Co-Lead Counsel are supported by Plaintiffs' counsel in 16 of the 23 Related Actions***.[3] *See* Klinger Decl. ¶¶ 7-19.

---

[2] *Herrick v. Nelnet Servicing, LLC*, No. 4:22-cv-03181 (filed Aug. 30, 2022).

[3] Proposed Interim Co-Lead Counsel have the support of counsel for Plaintiffs in the following actions: *Herrick v. Nelnet Servicing, LLC*, No. 4:22-cv-03181-JMG, (D. Neb.); *Carlson v. Nelnet Servicing, LLC*, No. 4:22-cv-03184-JMG (D. Neb.); *Ballard v. Nelnet Servicing, LLC*, No. 4:22-cv-03185, (D. Neb.); *Hegarty v. Nelnet Servicing, LLC*, No. 4:22-cv-03186 (D. Neb.); *Beasley v. Nelnet Servicing, LLC*, No. 4:22-cv-03187 (D. Neb.); *Varlotta v. Nelnet Servicing, LLC*, No. 4:22-cv-03188, (D. Neb.); *Hollenkamp v. Nelnet Servicing, LLC*, No. 4:22-cv-03189, (D. Neb.); *Miller v. Nelnet Servicing, LLC*, No. 4:22-cv-03193, (D. Neb.); *Freeman v. Nelnet Servicing, LLC*, No. 4:22-cv-03197, (D. Neb.); *Sayers v. Nelnet Servicing, LLC*, No. 4:22-cv-03203, (D. Neb.); *Gamen v. Nelnet Servicing, LLC*, No. 4:22-cv-03209, (D. Neb.); *Freeland v. Nelnet Loan Servicing, LLC*, No. 4:22-cv-03211 (D. Neb.); *Kitzler v. Nelnet Loan Servicing, LLC*, No. 4:22-cv-03241, (D. Neb.); *Quinn v. EdFinancial Services, LLC et al*, No. 8:22-CV-00413, (D. Neb.); *Eichenblatt v.*

In stark contrast, counsel for plaintiffs in the later filed actions who filed a competing application[4] have done nothing to advance this litigation. As described below, without consultation with counsel for any of the Related Actions, they filed an unsuccessful motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking centralization. The motion only served to delay this litigation and was ultimately denied because self-consolidation in the District of Nebraska was already well underway thanks to the efforts of Proposed Interim Co-Lead Counsel, who contacted plaintiff's counsel for the actions pending in California, Illinois and Florida and convinced them to transfer their actions. Klinger Decl. ¶ 4. Additionally, following their unsuccessful motion with the JPML, the Minority Leadership Application then moved for leadership and consolidation in this Court—again, without conferring with any of the counsel in the Related Actions. Had they done so, they would have realized that the vast majority of plaintiffs and law firms involved in this litigation prefer Proposed Interim Co-Lead Counsel to represent the interests of the Class.

For these reasons, First Filed Plaintiffs propose that Interim Co-Lead Counsel, in consultation with counsel for all Related Actions, have responsibility for strategic decisions associated with the prosecution of these consolidated cases (and any subsequently filed consolidated case). As described herein, this proposed leadership structure has the support of the majority of firms involved in this litigation, and it will permit Plaintiffs to prosecute this case efficiently and in the best interests of the putative classes. Proposed Interim Co-Lead Counsel are

---

*Nelnet Loan Servicing, LLC*, 4:22-cv-03227 (D. Neb.); and *Joaquin-Torres v. Nelnet Servicing, LLC*, 4:22-cv-03196 (D. Neb.).

[4] *Spearman, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3191 (D. Neb.) ("*Spearman*") and *Bump, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3204 (D. Neb.) ("*Bump*") (hereinafter the "Minority Leadership Application").  Counsel for the Minority Leadership Application also filed third case in this litigation (*Scott v. Nelnet Servicing, LLC*, No. 4:22-cv-03259 (D. Neb. Dec. 7, 2022) ("*Scott*")) in an apparent attempt to self-promote support for their proposed leadership group.

experienced with handling class action litigation, especially data breach and privacy cases, and have performed substantial work investigating, originating, coordinating, and litigating these claims. Furthermore, Proposed Interim Co-Lead Counsel have the experience, knowledge, and resources to continue to prosecute this action in the putative classes' best interest, including substantial experience litigating privacy and data breach class actions. Additionally, Proposed Interim Co-Lead Counsel have a history of working together and with counsel for most of the Related Actions, and will continue to work cooperatively and effectively towards the interests of the proposed classes in the event they are appointed as Interim Co-Lead Counsel.

## II.    BACKGROUND

This action stems from a data breach suffered by Defendant Nelnet Servicing, LLC (the "Data Breach"), a technology service provider headquartered in Lincoln, Nebraska. Nelnet administers loan services to student loan borrowers and financial institutions and collects and maintains the sensitive, non-public personal identifying information ("PII") of millions of consumers nationwide. On or about July 21, 2022, an unknown criminal actor breached Defendant's security system and accessed the PII stored therein. The Data Breach was reported by Defendant on or around August 26, 2022 and resulted in the theft of PII of over 2.5 million student loan borrowers.

Counsel for First Filed Plaintiffs began investigating the claims at issue here two weeks before Defendant publicly announced the Data Breach and filed the very first action, *Herrick v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03181, on August 30, 2022, in the District of Nebraska. Since the filing of this action, Nelnet has been named in an additional 22 actions related to the Data Breach, all but four of which have been filed in this District. Three of the four actions not filed in this District were subsequently transferred to this District thanks to the efforts Proposed

4

Interim Co-Lead Counsel. In particular, Attorney Gary M. Klinger of Milberg, affirmatively contacted plaintiff's counsel for three of the actions—*Quinn v EdFinancial Services, LLC et al.*, No. 1:22-CV-05467 (N.D. Ill. filed October 5, 2022); *Kitzler v. Nelnet Servicing, LLC*, No. 2:22-cv-06550 (C.D. Cal., filed Sept. 13, 2022); and *Eichenblatt v. Nelnet Servicing, LLC*, No. 6:22-CV-01794 (M.D. Fla. filed Oct. 3, 2022)—and convinced them that this litigation should be self-consolidated in the District of Nebraska. As a result, those actions voluntarily transferred to the District of Nebraska. *See* Klinger Decl. ¶ 4.

Nonetheless, without consulting counsel in other Related Actions, plaintiffs in two late-filed actions, the *Spearman* and *Bump* actions, moved before the JPML under 28 U.S.C. § 1407 to centralize this litigation in the District of Nebraska, which was largely opposed by First Filed Plaintiffs as unnecessary given that self-consolidation was already underway and the JPML motion would only serve to delay the litigation and cause the parties to incur unnecessary costs to brief and argue the motion—all to the detriment of the class. Counsel on the first-filed case, *Herrick*, presented oral argument for the position that centralization was premature, inefficient, and interfered with informal consolidation between the parties under 28 U.S.C. § 1404 – a position ultimately accepted by the JPML. *Id*. ¶ 5. In denying the *Spearman* and *Bump* cases' hasty § 1407 request, the JPML concluded that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. *In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, MDL No. 3053, ECF No. 60.[5] The JPML further noted that "voluntary cooperation and coordination among the parties" is preferred to centralization, just as Proposed Interim Co-Lead Counsel was already orchestrating. *Id*.

---

[5] Counsel in the *Spearman* and *Bump* actions subsequently filed a third action following the JPML's denial of their attempt to centralize proceedings, *Scott, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3259 (D. Neb.).

While the JPML motion was pending, Proposed Interim Co-Lead Counsel continued to lead the litigation on behalf of the Class. On November 21, 2022, they participated in an all-day mediation with the Hon. Louis Meisinger (Ret.) of Signature Resolution. Klinger Decl. ¶ 6. Prior to that mediation, First Filed Plaintiffs served, and Defendant responded to, informal discovery requests regarding the nature of the data breach, the size and scope of the breach, and other information necessary to evaluate a potential classwide settlement. *Id*. In other words, Proposed Interim Co-Lead Counsel have gained an intimate understanding of the data breach that make them particularly well-suited to lead this litigation and ultimately resolve it on behalf of the class.

On December 13, 2022, and following their unsuccessful JPML motion, plaintiffs in the *Spearman, Bump, and Scott* actions then filed a motion to consolidate the actions against Nelnet and to appoint their attorneys as lead counsel. *See Spearman*, Case No. 4:22-cv-03191-JMG-CRZ, ECF Nos. 33-35. Counsel for plaintiffs in the *Spearman*, *Bump, and Smith* actions, who are the same counsel across the three cases, again did not confer with counsel in any of the other Related Actions before filing their motion. It appears no other plaintiffs or counsel support the Minority Leadership Application. Conversely, Proposed Interim Co-Lead Counsel have worked together and with counsel for the Related Actions to self-organize and their cooperative efforts have secured the support of plaintiffs and their counsel for 16 of the 23 Related Action. *See* Klinger Decl. ¶¶ 7-19. In other words, the overwhelming majority of plaintiffs and their counsel support the appointment of Proposed Interim Co-Lead Counsel as class counsel.

## III.   CONSOLIDATION

### A.   Legal Standard

Consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil Procedure, which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Rule 42(a). FRCP 42 permits consolidation of cases involving common questions of law or fact. *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998) ("All claims and issues sharing common aspects of law or fact may be consolidated to avoid unnecessary cost or delay."). Consolidation is meant to promote judicial convenience and judicial economy and "should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 130 (2d Cir.1999) (internal citations and quotations omitted); *see also Blair v. Equifax Check Servs. Inc.*, 181 F.3d 832, 839 (7th Cir. 1999) ("By far the best means of avoiding wasteful overlap when related suits are pending in the same court is to consolidate all before a single judge."). The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law." *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994) (quoting *Seguro de Servicio de Salud v. McAuto Sys. Group,* 878 F.2d 5, 8 (1st Cir.1989)). The Court must also consider whether consolidation would lead to "inefficiency, inconvenience, or unfair prejudice to a party." *HBE Corp.*, 135 F.3d at 551.

### B.    Consolidation of the Related Actions is Warranted

Here, consolidation of the Related Actions under Rule 42 is warranted, as the actions raise the same questions of law, arise from the same set of facts surrounding the Data Breach, and define substantially overlapping classes of impacted individuals. Each of the Related Actions seek to represent classes of individuals whose PII was compromised as a result of Defendant's acts and

omissions regarding data security, and each seek to represent at least a nationwide class of individuals whose PII was compromised in the Data Breach. Moreover, of the 23 Related Actions, each names Nelnet as a Defendant while only two[6] name EdFinancial Services LLC in addition to Nelnet as a Defendant. *See UNeMed Corp. v. ProMera Health, LLC*, No. 8:15CV135, 2016 WL 1259387, at *3 (D. Neb. Mar. 30, 2016) (ordering consolidation because "[a]lthough the one action involves four parties and the other two, it appears the cases involve common questions of law and fact."). Similarly, all of the Related Actions assert claims for negligence and breach of contract against Nelnet in addition to other tort and/or state statutory claims. Accordingly, despite minor variations in the state specific classes or claims across the Related Actions, the common claims arising out of the same factual allegations make consolidation appropriate. As the Middle District of Florida noted:

> [T]he specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues. In other words, with thirteen separate cases pending, the Undersigned finds that the risk of inconsistent adjudications of common factual and legal issues far outweighs any specific risks of prejudice and possible confusion

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at *2-3 (M.D. Fla. July 21, 2016), report and recommendation adopted, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) (internal citations omitted).

Indeed, data breach cases like the one at issue here are particularly well suited to consolidated proceedings and federal courts routinely order that such cases be consolidated. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 690 (7th Cir. 2015); Order of July 12, 2016, *First Choice Federal Credit Union v. The Wendy's Co., et al.*, 2:16-cv-506, ECF No. 20 (W.D. Pa.

---

[6] *Kohrell v. Nelnet Servicing, LLC*, No. 4:22-CV-03267, (D. Neb.) and *Quinn v. EdFinancial Services, LLC et al*, No. 8:22-CV-00413 (D. Neb.).

July 12, 2016); *see generally* Consol. Am. Compl., *Greater Chautauqua Federal Credit Union v. Kmart Corp. et al.*, 1:15-cv-02228, ECF No. 44 (N.D. Ill.).

If not consolidated, separately litigating the Related Actions would result in virtually identical discovery requests, duplicative motion practice, and would cause an unnecessary drain on party and judicial resources. In the interest of efficiency, First Filed Plaintiffs also ask that the Court enter a schedule for the filing of a consolidated complaint and any motions or briefing related to the same.

## IV.   APPOINTMENT OF INTERIM CO-LEAD COUNSEL

### A.   Legal Standard

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3) (cited in *Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK), 2014 WL 835174, at *2 (D. Minn. Mar. 4, 2014)); *see also Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020). Designating lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig*. § 21.11 (4th ed. 2004)).

Determining the appointment of lead class counsel requires the court to consider counsel's: "(1) work in identifying and investigating potential claims; (2) experience in handling class action

9

and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources." *Adedipe*, 2020 WL 835174, at *2 (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig*. § 10.22 (4th ed. 2004) . The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005).

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of the Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all the parties on their side, and that their charges will be reasonable." *Manual for Complex Litig*. § 10.22. The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221.

**B.     The Court Should Appoint Milberg, Morgan & Morgan, and Stueve Siegel Hanson as Interim Co-Lead Counsel Under Rule 23(g)**

Proposed Interim Co-Lead Counsel satisfy all requirements for appointment by the Court.

*i.     Proposed Interim Co-Lead Counsel have performed substantial work investigating and litigating the claims.*

10

The Proposed Interim Co-Lead Counsel have been diligent in investigating and advancing this litigation. Among other things, counsel for First Filed Plaintiffs began investigating the Data Breach two weeks before it was publicly announced by Defendant. Klinger Decl. ¶ 2. Counsel's investigation prior to filing the first filed Related Action included: analyzing the circumstances surrounding the Data Breach, interviewing consumers injured by the Data Breach, researching legal claims, drafting initial pleadings, engaging a retired FBI agent to investigate the scope of the Data Breach, engaging other experts in the area of data security and damages, organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward. *Id*. ¶¶ 2-4. Counsel also appeared at the JPML hearing and successfully defeated an unnecessary and wasteful JPML motion. *Id*. ¶ 5. Indeed, counsel for First Filed Plaintiffs assisted with investigating, researching, and drafting complaints in five of the Related Actions and, as a result of their efforts, counsel for 16 of the 23 Related Actions support the proposed leadership structure. *See id*. ¶¶ 7-19.

Moreover, Proposed Interim Co-Lead Counsel have worked with counsel for Defendant to explore a mediated resolution of the litigation. While Proposed Interim Co-Lead Counsel were unable to reach an agreement with Defendant regarding settlement, having the support of 16 of the 23 Related Actions and deep experience negotiating with Defendant, Proposed Interim Class Counsel remain best suited to lead future settlement discussions with Defendant on behalf of the proposed classes.

Because the data breach at issue is egregious in terms of the information exposed and the number of victims affected, Proposed Interim Co-Lead Counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed Interim Co-Lead Counsel's efforts at self-organization were

11

successful as 16 of the 23 Related Actions support the organizational structure advanced by Proposed Interim Co-Lead Counsel herein. *Id.*

The Proposed Interim Co-Lead Counsel operate as a cohesive, well-organized group. Work assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity. Going forward, and if appointed, the Proposed Interim Co-Lead Counsel will establish a standardized protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation to date weigh in favor of appointing the Proposed Interim Lead Counsel under Fed. R. Civ. P. 23(g)(3).

### ii. *Proposed Interim Class Counsel Have Significant Relevant Experience*

Proposed Interim Lead Counsel are well-qualified to lead this case. Each member has a track record of successfully litigating and resolving consumer class actions, particularly data breach class actions. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"). Proposed Interim Co-Lead Counsel have ample experience handling class actions (including class actions involving data breaches), complex litigation, and consumer claims. The qualifications and experience of Morgan & Morgan and Stueve Siegel Hanson are detailed in their concurrently filed motions to consolidate and for appointment of interim lead counsel. As one of the Proposed Interim Co-Lead Counsel, Milberg's representative experience is set forth below:

### a. *Milberg*

Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and

recovered over $50 billion in verdicts and settlements.[7] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[8] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."

The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred attorneys who work from offices across the United States and in Portugal, the United Kingdon, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent— from the standpoint of age, gender, experience, and geographic location.[9]

***Gary M. Klinger*** is a Partner at Milberg.  At only 37-years-old, Mr. Klinger is one of the most well-known and respected data privacy attorneys in the United States. Mr. Klinger has settled more than fifty class actions as lead or co-lead counsel and recovered over $100 million in the process. In the past two years alone, Mr. Klinger has settled several high-profile privacy and data breach class actions. *See, e.g.*, *Boone, et al. v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir.

---

[7] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[8] See https://milberg.com/precedent-setting-decisions/page/3/.

[9] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers for violation of Illinois' Biometric Information Privacy Act); *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at $17 million); *Heath v. Insurance Technologies Corp.*, No. 21-cv- 01444 (N.D. Tex.) (where Mr. Klinger served as lead counsel and reached a class-wide settlement for $11 million for a major data breach involving more than 4 million consumers); *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv- 1329-TWP-DLP (S.D. Ind.) (where Mr. Klinger was appointed Co-Lead Counsel in a data breach case involving approximately one million class members and reached a settlement for $4.35 million); *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (where Mr. Klinger served as lead counsel in a data breach class action involving more than 2.4 million class members and reached a settlement for $4.75 million).

Mr. Klinger presently serves as court appointed co-lead counsel to more than 2 million class members in the data breach litigation styled *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.). Mr. Klinger also serves as appointed co-lead counsel to represent more than 3 million class members in another major data breach class action in the Seventh Circuit. *See In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.).

Simply put, Mr. Klinger and the attorneys at his law firm have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g., In re Blackbaud Data Privacy* MDL No. 2972 (D. S.C.) (where Milberg serves as interim class counsel in a data breach involving millions of

14

consumers); *Jackson-Battle v. Navicent Health, Inc*., No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. filed Apr. 29, 2020) (Mr. Klinger appointed Class Counsel in data breach case involving 360,000 patients; settlement valued at over $72 million); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (Mr. Klinger appointed Class Counsel; settlement value of over $13 million).[10]

Mr. Klinger has also successfully litigated privacy class actions through class certification. *In Karpilovsky v. All Web Leads, Inc*., No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id*. The case ultimately settled for $6.5 million. In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel).

In addition to his data privacy litigation experience, Mr. Klinger is a Certified Information Privacy Professional (CIPP/US) and presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

**Harper Segui** is a partner and practice leader in the Consumer Products Group at Milberg. Ms. Segui is an experienced litigator who focuses her practice on representing plaintiffs in complex class action litigation, including data breach and privacy litigation. In addition to individual class actions, Ms. Segui has played active roles in multidistrict litigation and has several

---

[10] Additional information regarding Mr. Klinger and his firm is set forth in the Biography attached hereto as Exhibit A**.**

times been appointed by courts to serve on Plaintiffs' Steering Committees. She was recently appointed as Co-Lead Counsel in one of the largest data breach MDLs in the country *In Re: Blackbaud, Inc., Customer Data Breach Litigation*, 3:20-mn-02972-JMC, MDL No. 2972 (D.S.C.). Ms. Segui has particularly honed technical skills which arm her with the ability to develop complex issues of science and technology at the heart of her cases, including the ability to engage experts and present these technical aspects in court. She been appointed to a number of leadership roles, and provided integral support for many more.  Representative cases include *In Re: Windsor Wood Clad Windows Prods. Liab. Litig.*, 16-md-02668, MDL No. 2688 (E.D. Wis.) and *In Re: Allura Fiber Cement Siding Litig.*, No. 2:19-mn-02886 (D.S.C.), where she also serves as Co-Class Counsel. She also played essential supporting roles, including as a member of expert teams, in *In Re: MI Windows and Doors, Inc, Prods. Liab. Litig.*, 2:12-mn-00001, MDL No. 2333 (D.S.C.), *In Re: Pella Corp. Architect and Designer Series Windows, Mktg., Sales Prac. and Prods. Liab. Litig.*, 2:14-mn-00001, MDL No. 2514 (D.S.C.). Ms. Segui has been regularly selected to Super Lawyers as a Top-Rated Attorney in the areas of "Class Action & Mass Torts." She has co-authored several publications on product liability and other topics and has been a lecturer on complex legal issues.

### iii. *Proposed Interim Co-Lead Counsel have committed, and will continue to commit, the resources necessary to represent the class.*

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(C). With more than 800 attorneys at their collective firms, Proposed Interim Co-Lead Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class members.

16

In fact, Proposed Interim Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action. Proposed Interim Class Counsel have already engaged in discussions with experts and have expended significant resources in investigating the data breach, communicating with affected consumers, researching, and drafting complaints, and engaging in settlement discussions, that while unsuccessful, will help pave the way for future efforts at a negotiated resolution. To ensure that adequate funds are available to prosecute this litigation on behalf of the putative classes, Proposed Interim Co-Lead Counsel will also establish a system to pay assessments proportional to the needs of the case. And, as their firm resumes and counsels' experience indicate, Proposed Interim Co-Lead Counsel have the resources and willingness to see this litigation through to its conclusion, including trial.

### iv.  Other Factors Support Designating Proposed Interim Co-Lead Counsel

Notably, the proposed leadership structure has the support of 16 of the 23 Related Actions and the majority of Plaintiffs' counsel. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at **5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel. Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Manual for Complex Litig.* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Counsel's success in self organizing and securing the support of the majority of Plaintiffs' counsel in the Related Actions demonstrates

their suitability for leadership roles. Proposed Interim Co-Lead Counsel have the support of some

of the most experienced and successful data breach and privacy litigation attorneys in the country,

including:

**Rachele Byrd**: Rachele R. Byrd is a managing partner of Wolf Haldenstein Adler
Freeman & Herz LLP's San Diego office and has more than twenty-one (21) years
of experience handling class and other representative actions, including data
breach, consumer, corporate derivative, securities, antitrust, and employment class
actions.   Ms. Byrd served as Co-Lead Counsel in *Carrera Aguallo, et al. v. Kemper
Corp., et al.*, No. 1:21-cv-01883 (N.D. Ill.), a data breach class action that resulted
in a settlement valued at over $17 million. Ms. Byrd also sits on the Plaintiffs'
Steering committee in *In re: Zoom Video Communications, Inc. Privacy Litigation*,
No. 3:20-cv-02155-LB (N.D. Cal.), where the court recently granted final approval
of an $85 million settlement. She also sits on the Executive Committees in *In re
Lakeview Loan Servicing Data Breach Litigation*, Case No. 1:22-cv-20955-DPG
(S.D. Fla.) (data breach class action) and *Erazo, et al. v. The Regents of the
University of California, et al*., Case No. RG21097796 (Alameda Cnty. Super. Ct.)
(data breach class action) and is Co-Lead Counsel in *Hinds v. Community Medical
Centers, Inc*., Case No. 2:22-cv-01207-JAM-AC (E.D. Cal.) (data breach class
action).

**Raina Borrelli**: Raina Borrelli brings more than ten years of experience in data
breach litigation and class actions generally. Ms. Borrelli is a partner at Turke &
Strauss LLP where she leads the firm's class action practice group. Ms. Borrelli has
significant experience in data privacy litigation and is currently litigating more than
fifty data breach cases in courts around the country as lead counsel or co-counsel,
including *In re Netgain Tech. Consumer Data Breach Litig.*, 21-cv-1210 (D. Minn.)
(appointed by the court to the Plaintiffs' Interim Executive Committee); *In re C.R.
England, Inc. Data Breach Litig.*, 2:22-cv-374-DAK-JCB (appointed by the court
has Interim Co-Lead Counsel); *In re Lincare Holdings Inc. Data Breach Litig.*,
8:22-cv-1472-TPB-AAS (M.D. Fla.) (appointed to the Interim Executive
Leadership Committee); *McLaughlin v. Flagstar*, 22-cv-11470 (E.D. Mich.);
*Grogan v. McGrath RentCorp., Inc.*, 22-cv-490 (N.D. Cal.); *Henson v. SuperCare,
Inc.*, 22-cv-2820 (C.D. Cal.).

**M. Anderson Berry**: M. Anderson Berry is the head of the Complex Litigation
Department at the Arnold Law Firm, with an extensive background in privacy and
consumer/government fraud litigation. He is litigating more than fifty class action
cases across the country involving data breaches, including the following
representative matters in which he holds a leadership position: *Holmes v. Elephant
Insurance Company, et al*., No. 3:22-cv-00487-JAG (E.D.VA.) (Co-Lead
Counsel); *In Re: Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056
(N.D.Ill.) (Co-Lead Counsel); *In re: CaptureRx Data Breach Litigation*, No. 5:21-
cv-00523 (W.D.TX filed June 2, 2021) (Co-Lead Counsel) (settled); *In re: Mednax*

*Servs., Inc., Customer Data Security Breach Litig.*, No. 21-MD-02994 (S.D. Fla.) (Executive Comm.); and *A.A. ex rel. Altes v. AFTRA Ret. Fund*, No. 1:20-cv-11119 (S.D.N.Y. filed Dec. 31, 2020) (Co-Lead Counsel).

**Lori G. Feldman:** Lori G. Feldman chairs GGM's Class Action department and is the Managing Partner of the Firm's New York office. She has more than 25 years of experience in litigating complex consumer protection class actions, including data breach and privacy class cases, in federal courts throughout the country. Ms. Feldman serves and/or served in a leadership capacity in, among others: *In re Morgan Stanley Data Breach Litig.* (S.D.N.Y.) ($50 million settlement); *In re WaWa Data Breach Settlement* (E.D.Pa.) ($8 million settlement); *In re EyeMed Data Breach Litigation* (S.D. Ohio) (co-lead counsel); *In re Shields Data Breach Litigation* (co-lead counsel); *In re Paxton Data Breach Litigation* (W.D. Ky.) (co-lead counsel); *In re Lakeview Loan Servicing Litigation* (S.D. Fl.) (committee member). Ms. Feldman is a member of the Bar of the District of Nebraska and successfully litigated a complex securities fraud class action against ConAgra Foods, Inc. resulting in a $14 million settlement for class members. *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003).

**Terence R. Coates:** Terence R. Coates is the managing partner of Markovits, Stock & DeMarco, LLC in Cincinnati, Ohio and is the member of plaintiffs' counsel (on behalf of Plaintiff Jesse Herrick) to present oral argument in New York on December 1, 2022 for the position adopted by the Judicial Panel on Multidistrict Litigation in this litigation. Mr. Coates is currently participating as a member of plaintiffs' counsel in the over 70 data breach and data privacy cases pending around the country and is frequently appointed to leadership positions for plaintiffs in such cases. *See John v. Advocate Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.; Court-appointed interim co-lead counsel in a pixel data breach case); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00185 (S.D. Ohio; interim co-lead counsel); *Vansickle v. C.R. England, Inc.*, No. 2:22-cv-00374 (D. Utah; court-appointed interim co-lead counsel); *Rodriguez v. Professional Finance Company, Inc.*, No. 1:22-cv-1679 (D. Colo.; court-appointed interim lead counsel); *Migliaccio v. Parker Hannifin Corp.*, No. 1:22-CV-00835 (N.D. Ohio; court-appointed interim lead counsel); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga.; court-appointed interim class counsel); *Tracy v. Elekta, Inc.*, No. 1:21-cv-02851-SDG (N.D. Ga.; court-appointed interim class counsel); *Devine v. Health Aid of Ohio, Inc.*, No. CV-21-948117 (Cuyahoga County Court of Common Pleas, Ohio) (court appointed class counsel in finally-approved class action settlement); *Engle v. Talbert House*, No. A 2103650 (Hamilton County Court of Common Pleas, Ohio) (court-appointed class counsel in preliminarily-approved class action settlement); *Lutz v. Electromed, Inc.*, No. 0:21-cv-02198 (D. Minn.; co-lead counsel for plaintiffs in $825,000 settlement); *Morelli v. Jim Koons Management Co.*, No. 8:22-cv-00292-GJH (D. Md.; court-approved co-lead counsel in preliminarily-approved settlement); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio; court-approved interim co-liaison counsel); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-00036 (S.D.

19

Ohio; court-approved liaison counsel); *In re 20/20 Eye Care Network Inc. Data Breach Litigation*, No. 21-cv-61275 RAR (S.D. Fla.; Plaintiffs' Executive Committee); and, *Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.; Plaintiffs' Steering Committee).

**Joseph M. Lyon**: Joseph M. Lyon is the founding and sole member of The Lyon Firm, LLC. He has represented thousands of individual clients in over 47 MDL proceedings. Mr. Lyon has also served, and is serving, as Class Counsel, on Executive and Steering Committees, and as plaintiffs' counsel in over 60 class actions, including over 30 data breach cases, many of which include cases involving similar data security issues and claims brought in this matter. Mr. Lyon's experience in specific data breach cases includes, among others: *Hawkins v. Navy Federal Credit Union*, Case No: 1:19-cv-01186 (U.S District Court, E.D. of VA) (Final Approval of $9.25 million nationwide non-reversionary common fund settlement for TCPA violations); *Devine v. Health Aid of Ohio*, Case No: CV-21-948117(Cuyahoga County) (Final Approval granted in data breach class action for claims made settlement valued at $12.5 million); *In Re Southern Ohio Health System Data Breach*, Case No:A210886 (Hamilton County, OH) (Final Approval granted for nationwide non-reversionary common fund settlement of $1.95 million); *Migliaccio v. Parker Hannifin Corp.*, Case No. 1:22-cv-00835 (U.S. District Court, N.D. of OH)(Interim Class Counsel in data breach class action impacting over 100,00 current and former employees); *Alvarado v. JDC Healthcare Management, LLC*, Case No. DC-22-03137 (Dallas County, TX) (Interim Class Counsel in data breach action impacting over a million dental patients); *Forslund v. R.R. Donnelley & Sons Co.*, Case No: 1:22-cv-04260 (U.S. District Court, N.D. of IL) (Interim Class Counsel in data breach impacting over 100,000 customers); and *Rodriquez v. Professional Finance Co., Inc.*, Case No: 1:22-cv-01679 (U.S. District Court, Dist. of CO) (Interim Class Counsel in data breach action impacting over a million customers).

**Bryan L. Bleichner**: Bryan L. Bleichner is a shareholder at Chestnut Cambronne PA and has extensive experience serving as leadership or class counsel in numerous class action data breach cases including: *Johnson v. Yuma Regional Medical Center*, No. 2:22-cv-01061 (D. Ariz.); *In re Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-1210, (D. Minn.); *In re 20/20 Eye Care Network Inc. Data Breach Litigation*, No. 21-cv-61275-RAR (S.D. Fla.); *Baker v. ParkMobile, LLC*, No. 1:21-cv-02182 (N.D. Ga.); *In re Herff Jones Data Security Breach Litigation*,No. 1:21-cv-01329-TWP-DLP (S.D. Ind.); *In re EyeMed Vision Care, LLC Data Security Breach Litigation*, No. 1:21-cv-00036-DRC (S.D. Ohio); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio); *Greenstate Credit Union v. Hy-Vee, Inc*., No. 20-621-DSD-DTS (D. Minn.); *Village Bank v. Caribou Coffee Co., Inc.*, No. 0:19-cv-01640 (D. Minn.); *In re WaWa, Inc. Data Security Litigation*, No. 19-cv-6019-GEKP (E.D. Pa.); *In re Equifax, Inc., Customer Data Security Breach Litigation*, No. 17-md-2800-TWT (N.D. Ga.); *Midwest American Federal Credit Union v. Arby's Restaurant Group, Inc.*, No. 17-cv-00514-AT (N.D. Ga.); *Bellwether Cmty.*

*Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102 (D. Colo); *First Choice Fed. Credit Union v. The Wendy's Company*, No. 2:16-cv-00506 (W.D. Pa.); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.); *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 1:14-md-02583 (TWT) (N.D. Ga.); *In re Target Corporation Customer Data Security Breach Litigation*, No. 0:14-md-02522-PAM-JJK (D. Minn.); *Lutz v. Electromed, Inc.*, No. 70-CV-21-11814 (D. Minn.); *Thomas v. Pawn America Minnesota, LLC*, No. 0:21-cv-02554 (D. Minn.); and *Seabrian v. St. Joseph's/Candler Health System, Inc.*, No. STCV21-01652 (State Court of Chatham County, Georgia).

**Nicholas A. Migliaccio and Jason S. Rathod**: Nicholas A. Migliaccio and Jason S. Rathod are the founding partners of Migliaccio & Rathod LLP ("M&R") based in Washington D.C. They represent Plaintiff Veronica Joaquin-Torres in the instant litigation. M&R is plaintiffs' counsel in dozens of putative data breach and data privacy class action cases pending across the country, including in this District. The firm has been appointed to leadership positions in a number of these cases. *See, e.g., In re: Practice Resources, LLC Data Security Breach Litigation*, Case No. 22-CV-0890 (N.D.N.Y.) (appointed co-lead interim class counsel); *McHenry v. Advent Health Partners, Inc.*, Case No. 3:22-cv-00287 (M.D. Tenn.) (appointed co-lead interim class counsel in preliminarily approved settlement); *In re Netgain Technology, LLC Consumer Data Breach Litigation*, Case No. 210cv01210 (SRN/LIB) (D. Minn.) (interim class counsel steering committee appointment), *In re Eskenazi Health Data Incident Litigation*, No. 49D01-2111-PL-038870 (Ind. Sup. Ct.) (same), and *In Re Rutter's Inc. Data Security Breach Litigation*, Case No. 1:20-cv-382 (M.D. Pa.) (same).

**William B. Federman**: William B. Federman is the founder and Managing Member of Federman & Sherwood ("F&S"). F&S has been a key player in data breach class actions for many years and has garnered great success. Mr. Federman has over forty years of experience in all areas of complex litigation, including appeals and trials in various federal and state courts, and arbitrations nationwide. Mr. Federman has been actively involved in all aspects of the subject litigation since its inception. On September 2, 2022, F&S filed the fourth class action lawsuit addressing the Data Breach. *See Hegarty v. Nelnet Servicing, LLC*, No. 4:22-cv-03186 (D. Neb. Sept. 2, 2022). After filing their initial case, Mr. Federman diligently worked with the Milberg law firm, primarily Gary M. Klinger, to coordinate the later filed cases. Mr. Federman also successfully argued against centralization of the actions at issue at the Multi-District Litigation hearing, opining that because every case (apart from one) was now before this Court, centralization under 28 U.S.C. § 1407 was rendered unnecessary. Additionally, Mr. Federman coordinated with the plaintiffs' counsel in the prior filed actions to have several meet and confer conferences which allowed for an early mediation with Defendant and defense counsel. Although the mediation was unsuccessful, common issues were established, which could lead to additional meaningful discussions as the case progresses. Notably, among the cases currently on file before this Court, F&S is the only law firm to have served notice under the Oklahoma Governmental Tort Claims Act to the Oklahoma Student Loan Authority

21

("OSLA") for its involvement and negligence in the Data Breach. On January 3, 2023, a lawsuit was filed in the District Court of Oklahoma County, Oklahoma against the OSLA and Nelnet. *Carr v. Oklahoma Student Loan Authority and Nelnet Servicing, LLC*, No. CJ-2023-002 (Okla. Co., OK 2023). Through coordination with Mr. Klinger and the Milberg law firm, these cases will be coordinated and efficiently prosecuted.

Plaintiffs' counsel for the majority of the Related Actions support the appointment of Proposed Interim Co-Lead Counsel as they recognize that Proposed Interim Co-Lead Counsel will best serve the interests of the class members in the most efficient and cooperative manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the court, all of which are critical to successful management of the litigation. *See Manual for Complex Litig.* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.*

Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge together to form an alliance against often well-financed opponents, as is the case here where counsel for the vast majority of the Related Actions have coordinated organizational efforts. Because the consolidation process has the potential to breed disorganization, in-fighting, and inefficiencies, it is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines"), at 43. Selecting lawyers who have previously worked

22

together, as is the case here with Proposed Interim Co-Lead Counsel, has many benefits. They have developed working relationships, know of complimentary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.*

Here, as demonstrated above, Proposed Interim Co-Lead Counsel have strong working relationships with other Plaintiffs' counsel in the Related Actions and moved quickly and effectively to organize the majority of the Related Actions to support the leadership structure proposed herein. Moreover, Proposed Interim Co-Lead Counsel have developed a working relationship with counsel for Defendant as a result of their efforts to negotiate a settlement on behalf of class members. Though unsuccessful, the negotiations nurtured a professional, albeit antagonistic, relationship with counsel for Defendant that will inform future litigation or settlement discussions.[11]

Importantly, Proposed Interim Lead Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. Klinger Decl. ¶ 20. Proposed Interim Lead Counsel understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party funding to do so. *Id.* While Proposed Interim Co-Lead Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. To this end, Proposed

---

[11] Also worth noting, Proposed Interim Co-Lead Counsel have all settled data breach class actions on a classwide basis with Defendant's counsel in this case (Mullen Coughlin). *See, e.g., Kyle Nelson v. Idaho Central Credit Union,* Case No. CV03-20-00831(Idaho, Bannock County) (where Milberg served as lead counsel and negotiated with defendant's counsel, Mullen Coughlin, a non-reversionary cash settlement paying $86.93 per class member, 12 months of additional credit monitoring services and identity restoration, and additional business practice commitments). Accordingly, Proposed Interim Co-Lead Counsel are well-positioned to negotiate a successful settlement on behalf of the Class here.

23

Interim Lead Counsel have already discussed how best to organize to effectively use its members' diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

      **C.**    **The First-to-File Rule Further Supports the Appointment of Proposed Interim Co-Lead Counsel**.

As mentioned above, Proposed Interim Co-Lead Counsel filed the very first action (*Herrick*) arising out of this data breach. When dueling motions for appointment as interim class counsel are filed pursuant to Rule 23(g), federal courts across the country give deference to counsel in the first-filed case when they are qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. DairyAmerica, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment

of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

Proposed Interim Co-Lead Class respectfully submits this Court should follow the majority of courts across the country to address this issue and reach a similar result.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order the Related Actions (and all subsequently filed related actions) be consolidated under the first filed and lowest numbered case, *Herrick v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03181, further order the appointment of Milberg Coleman Bryson Phillips Grossman, LLC, of Morgan & Morgan, and of Stueve Siegel Hanson as Interim Co-Lead Counsel, and enter a schedule for the filing of a consolidated complaint and any motions or briefing related to the same.  If the Court is inclined to entertain the oral argument on the suitability of the Related Actions for consolidation and for appointment of Interim Co-Lead Counsel, First Filed Plaintiffs respectfully request the opportunity to present oral argument in support of their motion.

Dated: January 3, 2022                    Respectfully submitted,

                                            /s/ *Gary M. Klinger*
                                            Gary M. Klinger
                                            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                                            221 West Monroe Street, Suite 2100
                                            Chicago, IL 60606
                                            (866) 252-0878
                                            gklinger@milberg.com

                                            *Attorneys for Plaintiffs*

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Gary M. Klinger*
Gary M. Klinger